UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS SHANLEY,<br><br>Plaintiff,<br><br>v.<br><br>TRACY LOGISTICS LLC, et al.,<br><br>Defendants. | No. 2:24-cv-01011-DC-JDP<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS, AND STAYING THE ACTION IN ITS ENTRIETY PENDING COMPLETION OF ARBITRATION<br><br>(Doc. No. 20) |

This matter is before the court on Defendants C&S Wholesale Grocers, LLC, formerly C&S Wholesale Grocers Inc.; Tracy Logistics LLC; and Sacramento Logistics LLC's (collectively, "Defendants") motion to compel arbitration of Plaintiff Travis Shanley's individual claims brought against them. (Doc. No. 20.) The pending motion was taken under submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No. 22.) For the reasons explained below, the court will grant, in part, Defendants' motion to compel arbitration.

**BACKGROUND**

Defendant C&S Wholesale Grocers, LLC ("C&S") is a nationwide supply chain services and wholesale grocery supply company that, through its operating subsidiary entities, supplies grocery products to more than 6,000 independent supermarkets, chain stores, military bases, and

1

institutions in California and throughout the United States. (Doc. Nos. 20-1 at ¶ 5; 25 at ¶ 4.) Defendant Tracy Logistics LLC ("Tracy"), a subsidiary of Defendant C&S, is one of the largest wholesale grocery suppliers on the West Coast and operates a facility in Stockton, California. (Doc. Nos. 20-1 at ¶¶ 5–6; 25 at ¶¶ 2–4.)

Individuals working in the Stockton facility may be employed as order selectors, receivers/unloaders, or loaders. (Doc. No. 28-1 at ¶ 6.) Order selectors receive assignments through order sheets or an audio headset system to pick grocery items from storage rack systems in the Stockton facility. (Doc. Nos. 26-1 at ¶ 3; 28-1 at ¶ 6.) The order selector then stacks the selected items on a pallet, wraps or bags the items on the pallet as necessary, prints out a shipping label that identifies the customer's name, city, and state, and attaches the label to the shipment. (Doc. Nos. 26-1 at ¶¶ 3–6; 28-1 at ¶ 6.) According to Defendants, there are three categories of order selectors for the three general categories of products received and stored at the Stockton facility: perishable order selectors, frozen order selectors, and non-perishable grocery order selectors. (Doc. No. 28-1 at ¶ 6.) Perishable order selectors procure only perishable produce, dairy, meat, poultry, and seafood items for customer orders. (*Id.*)

On May 13, 2022, Plaintiff filed an application for employment with Defendant Tracy. (Doc. No. 20-1 at ¶ 30.) As part of the application process, on May 16, 2022, Plaintiff reviewed and electronically signed Defendant C&S's mutual arbitration agreement regarding wage and hour claims ("the C&S MAA"). (*Id*. at ¶¶ 8, 19, 29, 38.)[1] Plaintiff began working in Defendant Tracy's Stockton facility on or around May 23, 2022, and worked until on or about December 14, 2022. (Doc. No. 25 at ¶ 5.) Plaintiff worked as an order selector. (Doc. 26-1 at ¶ 2.) According to

---

[1] On May 23, 2022, as part of the onboarding process, Plaintiff was presented with and signed Defendant Tracy's mutual voluntary arbitration agreement ("the Tracy MVAA"). (Doc. No. 20-2 at ¶ 9.) In a related declaratory relief action, Plaintiff challenges the formation and enforceability of the Tracy MVAA. *Shanley v. Tracy Logistics LLC et al.*, No. 23-cv-02608-DC-JDP. The Tracy MVAA covers wage and hour claims and broadly extends its coverage to claims including, but not limited to, discrimination, harassment, retaliation, and breach of contract. (Doc. No. 20-2 at 6–7.) In contrast, the C&S MAA narrowly applies to statutory and common law wage and hour claims and excludes many of the categories of claims the Tracy MVAA covers. (Doc. No. 20-1 at 21–22.) Notwithstanding the C&S MAA's limited coverage of claims, both this case and the declaratory relief action center around alleged violations of California's wage and hour laws—the types of claims that are covered by both arbitration agreements.

1  Defendants, Plaintiff worked exclusively with perishable products. (Doc. 28-1 at ¶¶ 13, 15.)

2  Plaintiff initiated this lawsuit by filing a wage-and-hour class action complaint on April 3, 2024, bringing eight causes of action against seven defendants: Tracy Logistics LLC; Stockton Logistics LLC; Fresno Logistics LLC; C&S Wholesale Grocers, LLC, formerly C&S Wholesale Grocers Inc.; C&S Logistics of Sacramento/Tracy LLC, and C&S Logistics of Fresno LLC. (Doc. No. 1.)

On July 12, 2024, Defendants filed the pending motion to compel arbitration of Plaintiff's individual claims and to stay all proceedings pending resolution of the arbitration under the Federal Arbitration Act ("FAA"), and in the alternative, the California Arbitration Act (the "CAA") to the extent the CAA is applicable and not preempted by the FAA. (Doc. No. 20 at 9.) Defendants assert Plaintiff must submit all his individual claims arising out of or relating to his employment to arbitration. (*Id*.) On July 24, 2024, Plaintiff filed the operative first amended complaint raising the same eight causes of action, but this time only naming Defendants C&S; Tracy; and Sacramento Logistics LLC. (Doc. No. 25.)

On July 26, 2024, Plaintiff filed an opposition to Defendants' motion to compel arbitration and supporting declaration. (Doc. Nos. 26; 26-1.) In his opposition, Plaintiff contends Defendants' pending motion was mooted by the filing of the first amended complaint. (*Id*. at 4.) Plaintiff also asserts that although he agreed to the C&S MAA, the C&S MAA provides that it is governed by the FAA, and the FAA does not apply to him because he is a transportation worker and is therefore exempt under 9 U.S.C. § 1. (*Id*. at 5–7.) Separately, Plaintiff argues the C&S MAA cannot be enforced under the CAA. (*Id*. at 7–9.)

On August 5, 2024, Defendants filed a reply to Plaintiff's opposition and evidentiary objections to Plaintiff's declaration. (Doc. Nos. 28; 28-2.) On August 12, 2024, Plaintiff filed objections to Defendants' reply and Defendants filed a response the following day. (Doc. Nos. 30–31.)

**LEGAL STANDARDS**

"The threshold issue in deciding a motion to compel arbitration is 'whether the parties agreed to arbitrate.'" *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011)

3

(quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988)). "When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)). The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023).

## A.     Federal Arbitration Act

The FAA governs written arbitration agreements affecting interstate commerce and provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111–12 (2001); 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 479 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3–4); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms.").

Under the FAA, a court's role is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If both conditions are met, the FAA requires the court to enforce the parties' arbitration agreement by its terms. *Chiron*, 207 F.3d at 1130. In ruling upon a motion to compel arbitration, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). The party seeking to compel arbitration bears the burden of proving the existence of an agreement and the party opposing bears the burden of proving any defense. *Norcia v. Samsung Telecoms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017); *Lim v. TForce*

*Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

**B.     California Arbitration Act**

Under the CAA, arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." *See* Cal. Civ. Proc. Code § 1281; *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000) (California law, like federal law, generally "favors enforcement of valid arbitration agreements."); *see OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2015) ("California law strongly favors arbitration."). As with motions to compel arbitration under the FAA, courts evaluate motions to compel arbitration brought under the CAA using a summary judgment standard. *Lane v. Francis Cap. Mgmt. LLC*, 224 Cal. App. 4th 676, 683 (2014). Unlike the FAA, the CAA as a state statute, "obviously does not prevent [California's] Legislature from selectively prohibiting arbitration in certain areas." *Armendariz,* 24 Cal. 4th at 98.

## DISCUSSION

**A.     Defendants' Evidentiary Objections**

"[A] court ruling on a motion to compel arbitration reviews the evidence on the same standard as for summary judgment under Rule 56." *Alkutkar v. Bumble Inc.*, No. 22-cv-00422-PJH, 2022 WL 16973253, at *3 (N.D. Cal. Nov. 16, 2022). Under Federal Rule of Civil Procedure 56, which governs summary judgment, "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).

In connection with Defendants' reply in support of their pending motion, Defendants object to certain portions of Plaintiff's declaration based on lack of personal knowledge, foundation, relevance, hearsay, and speculation. First, Defendants object that Plaintiff's statements referring to shipments of goods other than perishable goods are irrelevant because Plaintiff and the class of workers to which he belongs worked exclusively with perishable products. (Doc. No. 28-2 at 2–3.) Defendants' objection is well-taken because statements about products Plaintiff did not handle are not relevant to the analysis of the pending motion. Thus, the court sustains this objection, and the court will not consider those statements.

1    Second, Defendants object to Plaintiff's statements that he knew where shipments were going and where some of the groceries had come from because he saw shipping labels. (*Id*. at 2–3.) Defendants asserts these statements lacks foundation, personal knowledge, and constitute inadmissible hearsay. (*Id*.) Defendants' objections are not well founded, however, because foundation, personal knowledge, and hearsay evidence may be considered by the court in ruling on a motion to compel arbitration (and summary judgment) so long as the evidence could be presented in an admissible form at trial. *See Pierre v. Iec Corp.*, No. 22-cv-01289-FWS-JDE, 2023 WL 3551962, at *4, n. 1 (C.D. Cal. Mar. 14, 2023) (finding at the motion to compel arbitration stage that "except in the rare instances in which the objecting party demonstrates with specificity that the subject evidence could not be produced in a proper format at trial, the court does not consider any objections on the grounds that the evidence 'constitutes hearsay or inadmissible lay opinion, or that there is a lack [of] personal knowledge.'") (citing *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019)); *see also Morton v. Cnty. of San Diego*, No. 21-cv-01428-MMA-DDL, 2024 WL 5126281, at *4 (S.D. Cal. Dec. 16, 2024) ("objections for lack of foundation or relevance are not appropriate at summary judgment). Therefore, the court overrules Defendants' evidentiary objection based on foundation, personal knowledge, and hearsay.

Lastly, Defendants object to Plaintiff's statements he knew where shipments were going and where some of the groceries had come from because he saw shipping labels on the grounds that such statements are pure speculation. (Doc. No. 28-2 at 2–3.) The court finds Defendants objection is unfounded as Plaintiff has provided sufficient facts to substantiate his conclusion that some groceries had come from outside of California and shipments were leaving California. Accordingly, the court overrules Defendants' evidentiary objection based on speculation.

**B.     Defendants' Motion is Not Rendered Moot by the Filing of the First Amended Complaint**

An "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (citation omitted). Generally, courts deny a motion that targets a complaint that is no longer in effect. *See*

1   *Lemberg v. Lularoe*, No. 17-cv-02102-AB-SHK, 2018 WL 6927836, at *3 (C.D. Cal. Mar. 1,
2   2018) (denying the motion to compel arbitration as moot because the motion was targeted at a
3   previous iteration of the complaint and plaintiff's first amended complaint added new plaintiffs
4   and causes of action); *W. Air Charter, Inc. v. Sojitz Corp.*, No. 18-cv-07361-JGB-MAA, 2019
5   WL 6998765, at *1 (C.D. Cal. Aug. 1, 2019) (finding that upon plaintiff filing a third amended
6   complaint, defendant's arbitration motion no longer pertained to the operative pleading because
7   the third amended complaint eliminated all reference to the agreement defendants cited as the
8   basis for their arbitration motion).

9   Here, Plaintiff amended his pleadings only to remove four previously named defendants,
10  and he did so in reaction to Defendants' filing of a motion to dismiss on the basis of this court's
11  lack of personal jurisdiction over them. (Doc. No. 25.) Plaintiff's first amended complaint still
12  asserts the exact same claims as in the initial complaint, is based on the same factual allegations,
13  and it is those same claims that Defendants seek to compel Plaintiff to arbitrate. (*Compare* Doc.
14  No. 1 *with* Doc. No. 25.) Thus, the court finds Defendants' motion to compel arbitration of
15  Plaintiff's individual claims is not rendered moot by Plaintiff's filing of the first amended
16  complaint.

17  **C.    An Arbitration Agreement Exists Between the Parties**

18  The party seeking to compel arbitration bears the burden of proving by a preponderance of
19  the evidence that an agreement to arbitrate exists. *Norcia v. Samsung Telecomms. Am., LLC*, 845
20  F.3d 1279, 1283 (9th Cir. 2016), cert. denied, 138 S. Ct. 203 (2017). "With respect to the moving
21  party's burden to provide evidence of the existence of an agreement to arbitrate, it is generally
22  sufficient for that party to present a copy of the contract to the court." *Baker v. Italian Maple*
23  *Holdings, LLC*, 13 Cal. App. 5th 1152, 1160 (2017). As stated above, Defendants have presented
24  a copy of the C&S MAA, which Plaintiff electronically signed on May 16, 2022. (Doc. No. 20-1
25  at ¶ 38.) Therefore, Defendants have met their burden to provide evidence that an arbitration
26  agreement existed between the parties.

27  **D.    The FAA's Transportation Worker Exemption**

28  The FAA does not apply to employment contracts of "any . . . class of workers engaged in

7

foreign or interstate commerce." 9 U.S.C. § 1. This exemption has been construed to encompass "transportation workers" who are "actively engaged" and "play a direct and necessary role in the free flow of goods across borders." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) (citing *Circuit City Stores v. Adams*, 532 U.S. 105, 121 (2001)). A transportation worker is not required to work for a company in the transportation industry to be exempt under § 1 of the FAA. *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 252 (2024). Further, the transportation worker does not have to cross state borders. *See Saxon*, 596 U.S. at 458 (holding "one who loads cargo on a plane bound for interstate travel" is a transportation worker); *Lopez v. Aircraft Serv. Int'l Inc.*, 107 F. 4th 1096, 1103 (9th Cir. 2024) (concluding a fuel technician who places fuel in a plane used for foreign and interstate commerce is a transportation worker); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 909 (9th Cir. 2020) (holding drivers who made the "last mile" deliveries of packaged products from Amazon warehouses were engaged in the movement of interstate commerce and were transportation workers). The party resisting arbitration under this exemption "bear[s] the burden of proving that [the] exemption applies." *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 913 (N.D. Cal. 2020) (citing *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1151 (9th Cir. 2008)).

In assessing whether an employment contract comes within the scope of the FAA's transportation worker exemption, a court engages in a two-step analysis. *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F. 4th 1152, 1159 (9th Cir. 2024). First, the court defines the "relevant class of workers" to which the employee belongs. *Id*. (citing *Saxon*, 596 U.S. at 455). The relevant class of workers is determined with reference to "the specific nature of [the employee's] work, not [the] employer's status . . ." *Id*.; *see also Saxon*, 596 U.S. at 456 (holding an employee "is [] a member of a 'class of workers' based on what she does . . ., not what [her employer] does generally"). Second, the court determines whether that class of workers is actively engaged in foreign or interstate commerce and plays a tangible and meaningful role in the movement of goods across borders. *Ortiz*, 95 F.4th at 1159–60, 1162.

At the first step, the parties provide competing definitions of the relevant class of worker. Plaintiff contends he "belongs to a class of workers whose role is exclusively warehouse duties,

8

involving handling, organizing, and staging products in the flow of interstate commerce, but not moving them on the road or rail themselves." (Doc. No. 26 at 6.) In response, Defendants argue Plaintiff's class of workers should be limited to "warehouse workers who select from warehouse inventory predominantly locally-sourced, perishable inventory products for orders from predominantly in-state grocery stores." (Doc. No. 28 at 9.) The court finds neither of the parties' definitions properly define the relevant class. As *Saxon* instructs, Plaintiff's class of worker can be properly defined by reference to his job description, and entirely without reference to Defendants' line of business. *Ortiz*, 95 F.4th at 1162. According to Plaintiff, as an order selector he would find or pick specific groceries, sometimes wrap and bag groceries, assemble groceries for shipment on pallets, print and attach shipping labels to the groceries, and place the shipment at a bay door. (Doc. No. 26-1 at ¶¶ 3–6.) Similarly, according to Defendants, Plaintiff was responsible for selecting only perishable products for customer orders, stacking those selected items, wrapping the items on a pallet as necessary, attaching a shipping label to the pallet, and leaving the pallet in a staging area. (Doc. No. 28 at ¶ 6.) These job descriptions capture the undisputed work Plaintiff performed as an employee. Therefore, the court finds Plaintiff belonged to a class of workers that handled and prepared perishable products for shipment.

Turning to step two, the court must address whether an order selector that handled perishable products is actively engaged in foreign or interstate commerce. First, Defendants argue order selectors are not transportation workers because their work is not similar to that of a seamen or railroad worker. (Doc. No. 28 at 12.) Defendants contend the exemption was not meant to extend to warehouse workers who merely move products within a warehouse. (*Id*. at 12, n. 7.)

In his opposition, Plaintiff argues this case parallels the facts of *Ortiz*, in which the Ninth Circuit found warehouse workers who transported packages only within the warehouse were exempt from the FAA. (Doc. No. 26 at 6.) In *Ortiz*, the Ninth Circuit found that although the warehouse workers transported Adidas products only within the warehouse—to and from storage racks—the workers "fulfilled an admittedly small but nevertheless 'direct and necessary' role" in the interstate commerce of Adidas products. 95 F.4th at 1157–58, 1162, 1166.

In response, Defendants argue *Ortiz* is inconsistent with Supreme Court precedent and

1    was decided in error. (Doc. No. 28 at 12, n. 7.) The court finds Defendants argument is
2    unavailing. The Supreme Court expressly declined to review the Ninth Circuit's decision in *Ortiz*.
3    *See Ortiz v. Randstad Inhouse Serv.*, No. 23-1296, 2024 WL 4426655 (2024) (petition for writ of
4    certiorari denied). This court must follow binding precedent. *Mohamed v. Uber Techs., Inc.*, 848
5    F.3d 1201, 1211 (9th Cir. 2016). Thus, under *Ortiz,* warehouse workers who move products
6    within a warehouse may qualify as a transportation worker under § 1.

7    Next, Defendants contend Plaintiff's class of workers were not actively engaged in foreign
8    or interstate commerce because a majority of the products handled by Plaintiff never entered
9    interstate commerce. (Doc. No. 28 at 10–11.) Plaintiff asserts he engaged in interstate commerce
10   because he handled groceries that traveled interstate. (Doc. No. 26 at 7.). In support, Plaintiff
11   declares he knew some of the groceries had come from California, Idaho, and Oregon and the
12   "shipments would go to grocery retailers across the western states, including California, Nevada
13   (both Vegas and Reno), and Utah." (Doc. 26-1 at ¶¶ 7–8.)

14   In response, Defendants acknowledge some of the products it delivered from the Stockton
15   facility originate from suppliers outside of California. (Doc. No. 20-1 at ¶ 6.) However,
16   Defendants estimate approximately 80–85% of the perishable food items received, stored, and
17   selected for fulfilling customer orders from the Stockton facility originate from suppliers/vendors
18   in California. (Doc. No. 28-1 at ¶ 10.) The Stockton facility has approximately 750 active
19   customers comprised of both chain grocery stores and independent, "mom and pop" grocery
20   stores. (*Id*. at ¶ 12.) Defendants estimate "[a]pproximately 85% of those customers operate
21   entirely within California and thus receive deliveries from the Stockton [f]acility only within
22   California." (*Id*.) According to Defendants, approximately 15% or less of those customers have
23   locations outside of California that order products from the Stockton facility. (*Id*.) Further,
24   Defendants assert the Stockton facility has approximately 700 customer delivery routes per week,
25   and approximately 90% of those routes are for customer deliveries located only within California.
26   (*Id*.) Defendants argue Plaintiff did not actively engage in interstate commerce because he did not
27   handle products that came from or went to other states "on a frequent basis." (Doc. No. 28 at 10–
28   11.)

The court recognizes that "[s]omeone whose occupation is not defined by its engagement in interstate commerce does not qualify for the exemption just because she occasionally performs that kind of work." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (citing *Hill v. Rent-A-Center*, 398 F.3d 1286, 1289-90 (11th Cir. 2005)); *see Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 864 (9th Cir. 2021) (drivers who predominantly engaged in intrastate trips were not actively engaged in interstate commerce, "even though some [] drivers undoubtedly cross state lines in the course of their work.") (citing *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 916 (N.D. Cal. 2020)); *see also Nair v. Medline Indus.*, No. 22-cv-00331-DAD-JDP, 2023 WL 2636464, at *4 (E.D. Cal. Mar. 24, 2023) ("The question then is whether the interstate movement of goods was a "central part of the class members' job description.") (citing *Capriole*, 7 F.4th at 865).

Here, even if the court adopts Defendants' estimates, the court finds Plaintiff's class of workers frequently and actively engaged in interstate commerce. By Defendants' own estimate, approximately 15–20% of the perishable products Plaintiff's class of workers may have handled came from outside California. (Doc. No. 28-1 at ¶ 10.) This estimate stands in stark contrast to other cases in which courts have found a worker only engaged in interstate commerce occasionally. *See Capriole*, 7 F.4th at 864 ("Only 2.5% of 'all trips fulfilled using the Uber Rides marketplace in the United States between 2015 and 2019 . . . started and ended in different states' . . . [o]verall interstate trips, even when combined with trips to the airport, represent a very small percentage of Uber rides."); *Burns v. Maplebear, Inc.*, No. 24-cv-04618, 2024 U.S. Dist. LEXIS 158161, at *10 (N.D. Ill. Aug. 7, 2024) ("Instacart produced data showing that, on average, over the last three years, approximately 99.6% of Instacart orders in the United States were intrastate"); *See Walz v. Walmart Inc.*, No. 23-cv-06083-BHS, 2024 WL 2864230, at *7 (W.D. Jun. 6, 2024) ("At most, Walz plausibly alleges that he and some other Spark Driver workers have only occasionally delivered products across state lines. This does not demonstrate that he belongs to a class of transportation workers that is defined by its engagement in interstate commerce."); *Carr v. Traffic Mgmt., Inc.*, No. 24-cv-01333-HDV-JC, 2024 WL 4329070, at *3 (C.D. Cal. Aug. 13, 2024) ("Plaintiff points to the instances when he delivered traffic safety

11

equipment from TMI's facility in Michigan to customers in Indiana . . .[b]ut such instances occurred merely twice over the course of four years, and was not part of his paid job duties."). Thus, contrary to Defendants' characterization, the court finds that Plaintiff was actively engaged in handling perishable products that came from out of state.

Defendants also contend Plaintiff's class of workers did not engage in interstate commerce because any products they handled that came from outside of California were not a part of a single, unbroken chain of interstate commerce. (Doc. No. 28 at 11.) Defendants assert out-of-state goods "came to rest" at the Stockton facility, and any subsequent transaction to a California customer was "functionally" a separate "local transaction." (*Id*.) The court finds Defendants' argument unpersuasive. The flow of interstate commerce ceases when the goods in question have come to a *permanent* rest. *Rittmann*, 971 F.3d at 916 (emphasis added). When goods are "inevitably destined from the outset of the interstate journey" for delivery to known customers, the fact that goods may "pause" at a warehouse does not "remove them from the stream of interstate commerce." *Carmona Mendoza v. Domino's Pizza, LLC*, 73 F.4th 1135, 1138 (9th Cir. 2023). Defendants do not dispute that the perishable products were inevitably destined for the Stockton facility's customers, independent and chain grocery stores. (Doc. No. 28-1 at ¶ 12.) Thus, the fact perishable products paused their journey at the Stockton facility until they were inevitably delivered to Defendants' known customers did not remove them from the flow of interstate commerce.

Accordingly, the court finds Plaintiff has made a sufficient showing that he is a transportation worker under § 1 and, consequently, is exempt from coverage under the FAA. In light thereof, Defendants are not entitled, under the FAA, to an order compelling plaintiff to arbitrate his individual claims.

**E.     The CAA Applies**

In the alternative, Defendants ask the court to compel arbitration under the CAA, to the extent the CAA is applicable. (Doc. No. 20.) As discussed above, Plaintiff does not dispute that an arbitration agreement exists, or that he signed the C&S MAA. Instead, Plaintiff argues the C&S MAA cannot be enforced under California law. (Doc. No. 26 at 7–9.)

First, Plaintiff argues the C&S MAA cannot be enforced under California law because the agreement made the application of the FAA an essential term and "offer no application of state law in the alternative." (*Id*. at 7–8.) The court finds Plaintiff's argument unavailing. Courts have consistently determined an arbitration agreement's explicit selection of the FAA does not invalidate the entire agreement in the event the plaintiff is found to qualify for the FAA's transportation worker exemption. *See Breazeale v. Victim Servs., Inc.*, 198 F. Supp. 3d 1070, 1079 (N.D. Cal. 2016) (noting that "when a contract with an arbitration provision falls beyond the reach of the FAA, courts look to state law to decide whether arbitration should be compelled nonetheless"); *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833, 841 (2015) (applying California law to an arbitration agreement with a choice-of-FAA provision where the plaintiff was exempt from the FAA); *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1121 (1999) ("Assuming arguendo that the FAA does not apply, we would assess the validity of the parties' arbitration agreements under the California Arbitration Act.").

Second, Plaintiff cites to the decision in *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) to support his argument that the C&S MAA is unenforceable because California law does not allow class action waivers. (Doc. No. 26 at 9.) In *Gentry*, the court identified four factors that must be considered to determine whether a class action waiver in an arbitration agreement is unenforceable. 42 Cal. 4th at 463. The factors include: "the modest size of the potential recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real-world obstacles to the vindication of class members' right to [wages] through individual arbitration." *Id*. To be entitled to a finding that a class action waiver is unenforceable a plaintiff must make a "proper factual showing" as to those four factors. *Id*.; *Compare Garrido*, 241 Cal. App. 4th at 846–47 (affirming the trial court's finding that a class action waiver was unenforceable when plaintiff submitted evidence as to each of the four factors) *with Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 496–97 (2011) (reversing trial court's finding that a class action waiver was unenforceable when plaintiff failed to provide any evidence as to the four factors). Here, Plaintiff summarily concludes a class action waiver could be found unenforceable under *Gentry*. (Doc. No. 26 at 9.) However, Plaintiff has not

identified, what evidence, if any, supports his conclusion. Plaintiff has not met his burden of providing evidence that satisfies any of the four factors under *Gentry*. Therefore, the court finds the presence of class action waivers in the arbitration agreements does not render the agreements unenforceable.

Third, Plaintiff contends his wage and hour claims are not subject to arbitration under California Labor Code Section 229. (Doc. No. 26 at 8–9.) Section 229 states that "[a]ctions to enforce the provisions of this article [Cal. Lab. Code § 200–244] for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." *See* Cal. Lab. Code § 229; *Lane v. Francis Cap. Mgmt, LLC*, 224 Cal. App. 4th 676, 684 (2014). Only three of Plaintiff's eight causes of action are brought under the subject article. Specifically, Plaintiff's first three claims for failure to pay regular wages, failure to provide meal breaks or compensation in lieu thereof, and failure to authorize and permit rest breaks or compensation in lieu thereof, are brought under that article. (Doc. No. 25 at 15–20.) Therefore, the court shall stay Plaintiff's first three claims pending arbitration of Plaintiff's remaining individual claims. *See Neims v. Neovia Logistics Distrib., LP*, No. 23-cv-00716, 2023 WL 6369780, at *8 (C.D. Cal. Aug. 10, 2023) (ordering some claims to arbitration and staying proceedings with respect to the remaining claims that were not arbitrable).

## CONCLUSION

For the reasons explained above:

1. Defendants' motion to compel arbitration of Plaintiff's individual causes of action (Doc. No. 20) is granted in part;
2. Plaintiff shall be and hereby is ordered to submit his fourth through eighth individual causes of action brought against Defendants in this action to arbitration;
3. Plaintiff's first through third individual causes of action are stayed pending completion of the arbitration proceedings on Plaintiff's other individual claims;
4. Plaintiff's class causes of action are stayed pending completion of the arbitration proceedings;
5. The parties shall file a joint status report ninety (90) days from the date of entry of

|    |    |    |
|----|----|----|
| 1  |    | this order, and every 90 days thereafter, regarding the status of the arbitration |
| 2  |    | proceedings; |
| 3  | 6. | Within fourteen (14) days of the completion of the arbitration proceedings, the |
| 4  |    | parties shall file a joint status report to notify the court of the arbitrator's decision |
| 5  |    | and request that the stay of this case be lifted; and |
| 6  | 7. | The Clerk of the Court is directed to update the docket to reflect that Defendants |
| 7  |    | Stockton Logistics LLC, Fresno Logistics LLC, C&S Logistics of |
| 8  |    | Sacramento/Tracy LLC, and C&S Logistics of Fresno LLC have been terminated |
| 9  |    | from this action as of July 24, 2024, the date Plaintiff filed the first amended |
| 10 |    | complaint. |

IT IS SO ORDERED.

Dated:   **December 30, 2024**

Dena Coggins
United States District Judge